**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD FUNK,** | : | **CIVIL NO. 1:CV-10-0915** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **CHARLES CUSTER, et al.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Gerald Funk ("Funk"), an inmate at the State Correctional Institution at Coal Township

(SCI-Coal Township), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983.

Named as Defendants are Jeffery Beard, former Secretary of the Pennsylvania Department of

Corrections, and Dr. Stanish, a physician contracted to provide medical services to SCI-Coal

Township inmates.  Also named as Defendants are SCI-Coal Township employees David

Varano, Superintendent, and Charles Custer and John Dunn, Unit Managers.  The matter

proceeds on an amended complaint wherein Funk alleges that Defendants violated his First and

Eighth Amendment rights when they subjected him to environmental tobacco smoke ("ETS") in

violation of a medical order and retaliated against him for filing grievances and complaining

about said exposure.  (Doc. No. 17.)   Presently before the Court for consideration are motions to

dismiss the complaint filed by Dr. Stanish (Doc. No. 18) and the Corrections Defendants (Doc.

No. 23.)

**I.      Allegations in Amended Complaint**

By way of general background, Funk states that he is a non-smoker who has been

diagnosed with Allergic Rhinitis as well as strong allergic reactions to sulfur compounds and

chemical components found in cigarette smoke.  He claims that his reactions have become worse

over time due to repeated and prolonged exposure to cigarette smoke.  For nearly a decade he states he has been prescribed medications to treat his symptoms.  Due to his condition, he states that Dr. Weisner, who appears to be a prison physician at SCI-Coal Township, issued medical orders that he not be exposed to cigarette smoke or other indoor or environmental pollutants.  Funk states that his repeated exposure to cigarette smoke, mainly through being celled with smokers, has resulted in many trips to the prison medical department.  These symptoms include "pouring" nose bleeds, severe headaches, regurgitation, coughing, breathing difficulties, dizziness, hives, sneezing, and congestion.  (Doc. No. 17 at 3.)  Funk also experiences other side effects from smoke exposure including sleep deprivation, irritability, fatigue, loss of appetite, anxiety, and depression.  He claims that Defendants, as well as other prison officials, are well aware of his extensively documented medical reaction to cigarette smoke and of the physician's order not to expose him to smoke.  He alleges that Defendants' conduct has been the subject of numerous grievances and appeals.

Funk also notes that during an intake medical screening at SCI-Camp Hill in May 1999, the medical staff incorrectly listed his allergies as fish, shellfish, and wool instead of allergic rhinitis and compound allergies to smoke and sulfur.  He does state, however, that this mistake was later corrected in his records prior to his confinement at SCI-Coal Township and the incidents complained of in the instant action.  Funk also points out that there was another incorrect entry in his medical record stating that he had smoked twelve cigarettes a day.  Funk clarifies this entry by admitting that he used to "burn" a half pack of self-rolled cigarette tobacco each day for the purpose of Native American smudging—a purification and prayer practice.  (Id. at 4.)  However, he strongly emphasizes that the tobacco was not smoked during this process.

According to Funk, he ceased this practice in 2001 due to his strong reaction to the smoke.  He further claims that due to his repeated exposure to cigarette smoke he had to cease attending Native American worship services where tobacco and sweet grass are burned.

Specifically with respect to his claims against the Defendants, Funk states that he arrived at SCI-Coal Township on June 16, 2009.  At this time he informed intake officers and a nurse that he was allergic to smoke and needed to be celled with non-smokers.  However, he was placed in a "smoke-filled" dormitory with three heavy smokers and poor ventilation.  Complaints to unidentified block officers were unsuccessful.  Funk thereafter had a reception interview with a nurse the same day, informed her of his allergies, and complained about his housing assignment.  He witnessed the nurse record his allergy to Bactrim and cigarette smoke.  Due to his complaints for allergy symptoms, she provided him with Motrin, Benadryl and Claritin.  When the nurse inquired as to why Funk was not "z-coded," Funk stated that he had always entered into cell agreements with non-smokers at his prior place of confinement.[1]

While confined in the dormitory, Funk witnessed prison personnel repeatedly smoking at the door of the dormitory which resulted in smoke blowing into the dorm and causing him to suffer severe reactions.  Funk submitted a sick call request on June 21, 2009.  The following day, Funk was seen in the medical department and told to take extra Claritin.  He was further advised to return in a week at which time Benadryl would be prescribed.

On June 24, 2009, Funk submitted a grievance with respect to his housing assignment.  It is his belief that Defendant Custer removed the grievance from the dropbox to prevent it from being processed.  (Doc. No. 17 at 5.)

---

[1]  A designation of "z-coded" means that an inmate has single cell status.

On or about June 25, 2009, Custer informed Funk that he was keeping Funk in the dorm for at least sixty days because Funk was trying to cause trouble by complaining about smokers. Custer informed Funk that Custer ran the block, not the medical department.  (Id. at 6.)  Custer also told Funk to stop filing grievances and ignored information provided to him by Funk about a non-smoker who was willing to cell with Funk.

Funk voiced further complaints to block officers about the smoke in the dorm from June 25, 2009, through June 28, 2009.  On June 28, 2009, Funk was moved to FB-54 pursuant to an order issued by Custer.  In FB-54, Funk was double-celled with George Scherbenco, a known heavy smoker.  On July 2, 2009, Funk submitted a sick call request due to his exposure to smoke.  Between July 9, 2009, and July 15, 2009, Funk and his cellmate Scherbenco tried to work out an arrangement with Defendant Custer whereby Scherbenco would move back in with his old cellmate and Funk would be celled with inmate Boyd Knouse, a non-smoker.  An inmate request indicating all of the same information was also sent to Custer by Knouse.

On July 16, 2009, Funk was evaluated by Dr. Weisner, who issued written orders that Funk not be exposed to cigarette smoke due to medical allergies to smoke.  (Doc. No. 17 at 6.) Funk was advised to inform any officer who violated the orders to contact Dr. Weisner, Corrections Health Administrator Kathryn McCarty, or any medical staff member.  Funk informed the block officers and Custer of Dr. Weisner's orders upon his return to his block. Over the next several days a number of cell changes were made to accommodate inmate cell preferences, and although certain cells were empty, Funk remained celled with Scherbenco.  On July 21, 2009, Scherbenco told Custer that he smokes in the cell and about the problems Funk was experiencing including breathing difficulties, nosebleeds, headaches and hives. (Id. at 7.)

4

Scherbenco also reminded Custer about Funk's medical orders.  Custer responded that he was not going to do anything to benefit "that nut" and that Funk could suffer for a while.  (Id.)

Funk submitted a grievance on July 23, 2009, complaining about Custer's conduct and Custer's violation of the medical order not to expose Funk to smoke.  The grievance was supplemented on July 29, 2009.  On August 12, 2009, the grievance was denied as meritless.  An appeal to Varano was denied, as was a final level appeal therefrom.[2]

During the latter part of July 2009, Funk states that beds opened up in several cells.  On July 29, 2009, Scherbenco was finally moved.  At that time, Funk reminded Custer that he required a non-smoking inmate and that Knouse wanted to cell with him.  Instead, Custer moved James Barlow, a known heavy smoker, into the cell with Funk.  According to Funk, two days prior to this move, other inmates had complained to Custer about how Barlow was constantly smoking in the dorm.  (Id. at 8.)  Following a medical visit that day, Funk claims he returned to a heavily smoke-filled cell.  He complained to the block officer who, in turn, called Custer.  Custer told the officer that Funk was not getting a non-smoker cellmate.  The same day Funk submitted a request slip to Custer again providing the name of Knouse.

Funk approached Custer with respect to these matters on July 30, 2009.  Custer told him that he had called medical and there were no written orders by Dr. Weisner indicating that Funk should not be exposed to cigarette smoke.  (Id. at 9.)  Custer claimed that Funk's complaints

---

[2]  Varano denied Funk's grievance on the basis that SCI-Coal Township does not permit smoking on the housing units in light of the Clean Indoor Air Act.  Varano stated that merely because Funk may find himself celled with a smoker does not mean he is being exposed to cigarette smoke.  According to Funk, Varano ignored all of the facts he presented in his grievance, and merely cited to an anti-smoking law that is not enforced to justify violating Funk's medical orders.

were irrelevant in any event because inmates were not permitted to smoke indoors.  However,

Custer told Funk that if inmates were smoking, Funk should just deal with it.  Funk states that

Custer eventually agreed to look into celling Funk with Knouse.  When Funk refused to agree to

withdraw grievances filed against Custer, Custer became angry and sent Funk to his cell.

Despite Knouse's request to Custer to move in with Funk and the fact that open cells

were available, Funk remained celled with Barlow.  On August 3, 2009, Funk again confronted

Custer about the matter.  Custer moved Funk to an empty cell.  Two days later a non-smoking

inmate was moved in with Funk.

On August 6, 2009, Funk saw Dr. Stanish in the medical department and requested

treatment for his smoke-induced allergy symptoms.  Funk also asked Dr. Stanish to place further

documentation in Funk's record, as well as provide such information to the housing units, with

respect to Funk's medical orders.  Funk claims that Dr. Stanish refused to provide him treatment

or to honor Funk's other requests, but instead stated that they were irrelevant since inmates are

not allowed to smoke in the prison due to the Clean Indoor Air Act.

Thereafter, Funk filed two grievances, one on August 12, 2009, that Varano refused to

process, and one on August 14, 2009 (Grievance #286329).  The later grievance complained

about Dr. Stanish's actions and was denied.  On August 14, 2009, Custer moved Funk's non-

smoking cellmate out of the cell.  On August 20, 2009, an inmate who smoked was moved in

with Funk.  Funk maintains that this was in violation of his medical orders.  (Doc. No. 17 at 10.)

However, Funk states that Custer told the inmate that Funk did not smoke and could not be

around smoke.  (Id.; Ex. C; Cathart Decl.)  This inmate was celled with Funk until August 27,

2009, despite complaints to Custer by Funk and his cellmate.  On August 27, 2009, a non-

smoking inmate was placed with Funk.

On October 14, 2009, following a several week stay in the Restricted Housing Unit, Funk was placed in a cell with a smoker on BA Block.  Funk submitted a grievance, but it was never assigned a number.  It is Funk's belief that Dunn destroyed this grievance.  When Funk confronted Dunn, he was verbally threatened for filing grievances.  Frank states that several hours later, he was celled with a non-smoker.  On October 30, 2009, Funk submitted Grievance # 294879 with respect to the smoking issue.  He received a response that the matter had been resolved.  An appeal was later denied by Varano stating that any medical documentation issue should be moot since the facility is non-smoking.

On January 9, 2010, Funk reported to the medical department due to a "profuse nose bleed" he attributes to repeated exposure to cigarette smoke in the inmate bathroom.  On January 23, 2010, he had to leave work after repeated exposure to cigarette smoke in the inmate bathroom and dining hall, causing him to feel faint, as well as suffer a severe nose bleed and regurgitation.  According to Funk, prison staff deliberately continue to ignore the constant smoking taking place in the prison.

On February 9, 2010, Funk submitted a sick call request seeking a refill of his allergy medications due to the smoke-induced reactions he had been suffering.  He was seen on February 10, 2010, and was given two Benadryl capsules for immediate relief, along with prescriptions for additional medications.

Funk maintains that all Defendants, with the exception of Beard, were verbally informed by not only Funk, but other inmates, of Funk's medical condition, the medical orders, and the smoking complaints.  Funk claims he wrote letters to Beard dated June 3, 2007, and February 15,

2010, complaining about these matters, but his complaints were never resolved.  He claims that based on the foregoing, Defendants have been deliberately indifferent to his serious medical needs.  He further alleges that Custer and Varano conspired to violate his civil rights, and that Custer and Dunn retaliated against him for submitting complaints and grievances against them. In doing so, Funk claims he refrained from submitting grievances regarding additional conduct by Defendants.  He further claims that some inmates were not willing to submit declarations on his behalf, and that in retaliation Dunn placed Funk in a cell with a known aggressive homosexual who sexually harassed him.  (Id. at 22.)  Funk claims that he submitted a grievance against Dunn with respect to this issue on March 20, 2010.  (Id., Ex. D, Grievance #311994.) Funk requests declaratory, compensatory, and punitive relief in this action.

## II.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

8

Federal notice and pleading rules require the complaint to provide "the defendant notice

of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cnty. of Allegheny</u>,

515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u>

Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949

(2009) (explaining that Rule 8 requires more than "an unadorned, the defendant-unlawfully-

harmed-me accusation"); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

to "raise a right to relief above the speculative level").  Thus, courts should not dismiss a

complaint for failure to state a claim if it contains "enough factual matter (taken as true) to

suggest the required element.  This does not impose a probability requirement at the pleading

stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of  the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>,

550 U.S. at 556).  Under this liberal pleading standard, courts should generally grant a plaintiff

leave to amend his claims before dismissing a complaint that is merely deficient.  <u>See</u> <u>Grayson v.</u>

<u>Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17

(3d Cir. 2000).

## III.    Discussion

### A.    Motion to Dismiss filed by Corrections Defendants

The Corrections Defendants (Beard, Varano, Custer and Dunn) have filed a motion

seeking partial dismissal of the amended complaint.  (Doc. No. 23.)  In their supporting brief,

they seek to dismiss:  (1) all claims for monetary damages set forth against them in their official

capacities; and (2) all claims set forth against Beard due to his lack of personal involvement. (Doc. No. 28.)  Funk has filed his opposition to the motion, and it is now ripe for consideration.[3] For the reasons that follow, the motion will be granted.

The individual Corrections Defendants assert that, to the extent Funk is suing them in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment.  This Court agrees.  It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 226 (3d Cir. 2000) (holding that individuals are barred from seeking monetary damages from state governments or state agencies).  In Bey v. Pa. Dep't of Corr., 98 F. Supp. 2d 650, 657 (E.D. Pa. 2000), the court summarized the applicable law as follows:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow  v. Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

---

[3]  Initially, Funk opposed Defendants' motion on the basis that he was never served with a copy of Defendants' supporting brief.  (Doc. No. 24.)  However, it is clear that he subsequently received the brief because he has filed an opposition brief responding to the arguments raised by Defendants.

10

No exceptions to Eleventh Amendment immunity are applicable in the instant case.  The Commonwealth of Pennsylvania has not consented to be sued.  See 42 Pa. Con. Stat. Ann. § 8521(b).  Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages.  As such, any claims for monetary damages against the Corrections Defendants in their official capacities are subject to dismissal.[4]

The Corrections Defendants also seek to dismiss Beard from this action on the basis of lack of personal involvement.  In order to prevail in a § 1983 action, Funk must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior.  Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thus, individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement may be shown by either allegations of personal direction or actual knowledge and acquiescence in the deprivation.  Id.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.   Moreover, if an official's only involvement is investigating or ruling on an inmate's grievance after the incident giving rise to

---

[4]  In his brief in opposition to Defendants' motion, Funk claims that he does not seek monetary damages against Defendants in their official capacities, and agrees that any such claims would be subject to dismissal.  (Doc. No. 40 at 3.)

the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

In the instant case Funk does not allege any personal involvement on the part of Beard. Beard had no affirmative role nor did he personally direct any of the alleged misconduct. Rather, Funk seeks to impose liability upon Beard in his former position as Secretary of the Pennsylvania Department of Corrections. Funk admits he never had any actual dealings with Beard with respect to the underlying incidents; however, Funk states that he wrote Beard two letters complaining about being subjected to smoke in violation of the medical order. These letters were sent on or about June 3, 2007, and February 15, 2010. (Doc. No. 17 at 13.) Funk states that these complaints were never resolved. Regardless, merely asserting that he sent two letters over the span of two-and-a-half years, without more, is insufficient to find personal involvement on the part of a prison official at the top of the chain of command of the Department of Corrections who, undoubtedly, receives countless letters from inmates on a daily basis. See Bullock v. Horn, No. 99-1402, 2000 WL 1839171, at *5 (M.D. Pa. Oct. 31, 2000) (finding that "it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter"). For these reasons, the motion to dismiss will also be granted with respect to the claims set forth against Beard. All other claims set forth in the complaint against the Corrections Defendants, with the exception of the claims against Beard and the claims for monetary damages against the Corrections Defendants' in their official capacities, will proceed.

**B.      Motion to Dismiss filed by Defendant Stanish**

12

Case 1:10-cv-00915-YK-LQ   Document 50   Filed 03/31/11   Page 13 of 15

Also pending is a motion to dismiss the complaint filed by Dr. Stanish. Funk alleges that Dr. Stanish refused to treat Funk for smoke-induced allergy symptoms on August 6, 2009. At this visit, Funk informed Stanish about Funk's standing medical order that he not be exposed to cigarette smoke and that Defendants were ignoring the order. Although Funk asked Stanish to place additional documentation in his medical file regarding the medical order and to provide this information to the housing units, Stanish refused. Stanish responded by telling Funk his concerns were irrelevant in light of the no smoking policy within the prison pursuant to the Clean Indoor Air Act.

Dr. Stanish moves to dismiss the claims against him on the basis that Funk fails to state a claim upon which relief can be granted. Specifically, Dr. Stanish argues that Funk fails to objectively establish a harm sufficiently serious to fall within the protections of the Eighth Amendment. Dr. Stanish further maintains that Funk fails to allege facts sufficient to establish deliberate indifference.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106 (stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Instead, a constitutional violation requires "deliberate indifference," which may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnote omitted); see also Atkinson v. Taylor, 316

F.3d 257, 266 (3d Cir. 2003) (addressing ETS claim and stating that "[n]eedless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment"). "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990).

Funk has alleged that he advised Dr. Stanish of his smoke-induced allergy symptoms and that Dr. Stanish failed to treat his symptoms or take any action to correct the smoking situation. Based on the foregoing, and without expressing any opinion as to the ultimate success of these claims, the Court finds that Funk should be afforded the opportunity to develop his claims against Dr. Stanish.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD FUNK,** | : | **CIVIL NO. 1:CV-10-0915** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **CHARLES CUSTER, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

<u>**ORDER**</u>

   **AND NOW, THIS 31ˢᵗ  DAY OF MARCH, 2011,** in accordance with the attached

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

   1.     The Corrections Defendants' motion to partially dismiss the complaint (Doc. No.
          23) is **granted**.  All claims set forth against the Corrections Defendants in their
          official capacities for money damages are dismissed, as well as all claims set forth
          against Defendant Beard in this action.  All other claims set forth in the complaint
          against the Corrections Defendants, with the exception of Beard, will proceed.

   2.     The motion to dismiss filed by Defendant Stanish (Doc. No. 18) is **denied**.

   3.     Within twenty (20) days from the date of this order, Defendants shall file an
          answer to all claims remaining against them in the complaint.



                                        s/ Yvette Kane
                                        YVETTE KANE, Chief Judge
                                        Middle District of Pennsylvania